UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CONNIE SOTRES,                    ]
                                  ]
    Plaintiff,                   ]
                                  ]
    vs.                          ]          7:08-CV-00743-LSC
                                  ]
AVERITT EXPRESS, INC.,            ]
                                  ]
    Defendant.                   ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for partial summary judgment, which was filed on June 30, 2009, by Defendant Averitt Express, Inc. ("Averitt"). (Doc. 70.) Plaintiff Connie Sotres ("Plaintiff") has sued Averitt for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. Section 1981a for sex discrimination, sexual harassment, and retaliation, along with various state law claims. (Doc. 1.) Averitt moved for summary judgment solely on Plaintiff's retaliation claims. (Doc. 70.) The issues raised in Averitt's motion for summary judgment have been briefed by both parties and are now ripe for decision. Upon full

consideration of the legal arguments and evidence presented, Averitt's motion will be denied.

II.   Facts.[1]

Plaintiff began her employment with Averitt at its Ai3 facility through Team One Contract Services on February 7, 2005. At the time of her hire, Plaintiff held a position in Small Returnables. On January 2, 2007, she moved to the Replenishment-Repack department. While in this position, Plaintiff sorted large shipments of parts into smaller packages for transport for different locations at the Mercedes plant. Plaintiff alleges that an Averitt Supervisor, Michael Boone ("Boone"), sexually harassed and subsequently sexually assaulted her in a stand-alone office trailer that was located just outside her place of work.

On March 8, 2007, the day after her alleged assault, Plaintiff began a leave of absence that lasted until October 1, 2007. Plaintiff filed an EEOC

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

charge on August 29, 2007. The EEOC sent the charge to Carol Glass ("Glass"), the Human Resource Representative of Averitt, on September 5, 2007. On October 1, 2007, Plaintiff returned to work and to the Replenishment-Repack position. The next day, Plaintiff was moved to the Continual Improvement ("CI") team. This position is essentially a jack-of-all-trades, doing whatever is necessary to make the plant run smoothly, including remarking warehouse floors with new tape, re-labeling parts racks, and making new signs. In January 2008, Plaintiff was placed in the Sequence department. In this position, she was required to scan and place parts on a rack for transport to Mercedes.

    Plaintiff maintains that these two positions were demotions and that Averitt was acting in retaliation against her for her allegations of harassment. Plaintiff maintains that Replenishment-Repack was a heavily sought after position, while CI and Sequence were labor intensive, entry level positions that lacked the responsibility Plaintiff had enjoyed while in Replenishment-Repack. Averitt argues that the Replinishment-Repack duties had changed so significantly that to the extent that position still existed, it was in name only.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV. Analysis.

Plaintiff contends that Averitt retaliated against her in violation of Title VII after she complained about Boone's alleged sexually harassing conduct and assault. In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).

It is clear from the record that Plaintiff engaged in a statutorily

protected activity both when she initially complained on March 7, 2007 to Human Resources that Boone had raped her and when she filed her EEOC charge on August 29, 2007.  Therefore, she has met the first prong necessary to establish her prima facie case.

Furthermore, it appears that the Plaintiff's statutorily protected expression was sufficiently close in time to the alleged adverse employment action visited upon her to satisfy the causal relationship prong.  In reference to that prong, the Eleventh Circuit has stated, "We have plainly held that a plaintiff satisfies this element if [s]he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).  In *Farley*, the court found that a period of seven weeks was sufficient to establish a prima facie causal nexus.  *Id.*  In the present matter, Glass became aware of Plaintiff's EEOC Charge on September 5, 2007.  Plaintiff was reassigned on October 2, 2007, less than a month later and only one day after Plaintiff returned to work.  (Doc. 76, Ex. 1, Glass Depo. at 16-17; Ex. 2.)  It is clear then that Plaintiff has shown

sufficient temporal proximity to meet the third prong necessary to establish a prima facie case. Summary judgment therefore turns on whether the Plaintiff has established a prima facie case that she suffered an adverse employment action.

The Supreme Court in *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006), defined adverse employment actions in the context of a retaliation claim as an employer's actions that are "materially adverse to a reasonable employee or job applicant." *Id*. at 57. In other words, the "actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. "[N]ormally[,] petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*. at 68. The Supreme Court emphasized, however, that "context matters." *Id*. at 69. "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." *Id*.

Reassignment may constitute an adverse employment action. *Id*. at 71. In determining that "a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a

reasonable employee" in the *Burlington* case, the Court looked to several factors. *Id*. These included the relative difficulty of the jobs, their relative qualifications, and the esteem in which the two positions were held. *Id*.

The Eleventh Circuit has interpreted the *Burlington* case to represent a "decidedly more relaxed," more "liberal view of what constituted an adverse employment action" than the circuit had previously embraced. *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008). The *Crawford* court also noted a strong suggestion in *Burlington* that "it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Id*. at 973 n.13.

The evidence in this case, taken in the light most favorable to the Plaintiff, indicates that a reasonable employee could have considered her transfer from Replenishment-Repack to CI and later to the Sequence department to have been an adverse employment action. When Plaintiff was placed in Replenishment-Repack, it was a heavily sought after position. Walt Klein ("Klein"), site manager for Averitt at the Ai3 facility in which Plaintiff worked, stated, "Everyone wanted [the Replenishment-Repack

job]. It was the easiest job we had." (Doc. 70, Ex. 4, Klein Depo. at 185.) Klein stated that the Plaintiff was able to win the position because she "had been there the longest of the other folks who wanted it." *Id.* A day after her return, Plaintiff was moved to the CI team. While Klein testified that the CI team was also an easy position typically held by team members who request less physically intensive work, it is not clear from the evidence that the CI team was an equally sought after position.[2] *See* Doc. 70, Ex. 1. Since a reasonable employee would see reassignment from the most desirable position at a particular job to a less desirable position as an adverse employment action, Plaintiff appears to have met the relatively low bar set out in *Crawford* for the second prong of a prima facie case of retaliation.

Averitt argues, however, that it has a legitimate, non-discriminatory reason for reassigning Plaintiff. Once the plaintiff makes out a prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment

---

[2] In fact, Averitt's justification for reassigning Plaintiff to CI, that it was "a means of getting her back to work in a relatively easy job after a long layoff," strongly indicates that CI was not the sort of position that a senior employee would desire. *See* Doc. 70, Ex. 1.

action." *Sullivan v. AMTRAK*, 170 F.3d 1056, 1059 (11th Cir. 1999) (citations omitted). If a legitimate reason is proffered, the Plaintiff must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (citations omitted).

Averitt maintains that Plaintiff was reassigned from Replenishment-Repack "because her former position no longer existed since the duties of her former position were combined with the duties of another position." (Doc. 70, Ex. 1.) This characterization does not appear to be entirely accurate. The Replenishment-Repack position remained during her leave of absence and was filled by Dianne Warren ("Warren"). (Doc. 76, Ex. 2; Doc. 70, Ex. 1.) Plaintiff returned to that position on October 1, 2007, and worked there until she was reassigned the next day. Warren remained in the position even as Plaintiff began her work with the CI team. Averitt argues that due to restructuring and added responsibilities, the position existed in name only.[3] (Doc. 70, Ex. 1; Ex. 4, Klein Depo. at 219.) But this

---

[3] Plaintiff disputes this claim, stating in her affidavit that while on CI, she "had an opportunity to observe the work done by my replacement in the Replenishment-Repack Department, Dianne Warren, and Ms. Warren did the same work I had been doing

explanation still does not explain why Plaintiff could not return to her position and simply assume the additional duties. Presumably, there are two possible non-discriminatory reasons why this solution was not attempted. The first is explicitly stated by Averitt; CI was "a means of getting [Plaintiff] back to work in a relatively easy job after a long layoff." (Doc. 70, Ex. 1.) The second is more obvious. When Plaintiff returned to work, her former position was filled by an employee who had experience not only doing Plaintiff's former work but also the new duties that had been added. Both of these justifications are undermined, however, by Averitt's addition of several individuals to Replenishment-Repack three weeks after Plaintiff's return. (Doc. 76, Ex. 8.) Plaintiff, on the other hand, was eventually assigned to the Sequence department, a position she described as a "labor intensive entry level position that was again a demotion in responsibility for me." (Doc. 76, Ex. 2.) Averitt disputes Plaintiff's characterization of Sequence but misses the crux of Plaintiff's argument.

Prior to her alleged rape and EEOC complaint, Plaintiff was in a position where she could request and receive a coveted position in the

---

prior to me taking leave." (Doc. 76, Ex. 2.)

plant, Replenishment-Repack. Following her EEOC complaint, the evidence indicates that her influence over her own assignment had greatly waned. Plaintiff stated that at the time she was moved to the Sequence department, she would have "much rather returned to my former position in Small Returnables or worked in Receiving which were easier and better jobs than Sequence." (Doc. 76, Ex. 2.) Averitt disputes this statement, but apparently only to the extent that Plaintiff characterizes Small Returnables and Receiving as easier and better jobs than Sequence. *See* Doc. 84, ¶26. It appears to be undisputed that Plaintiff no longer had the same influence over her work assignment that she had held prior to her alleged rape and EEOC complaint.[4] Such a change is clearly a prima facie showing of an adverse employment action, and Averitt has produced no satisfactory, non-discriminatory reason why Plaintiff experienced this diminishment of both her prestige and her position relative to other workers at the plant.

V.   Conclusion.

---

[4] For instance, Lavon Elliott, a less senior employee than Plaintiff who worked with her in CI, was assigned to Receiving at the same time Plaintiff was moved to Sequence. (Doc. 76, Exs. 9 & 10.)

Having considered Plaintiff's allegations, it is apparent to this Court that the evidence is sufficient to create a jury question as to whether Averitt's actions constitute actionable retaliation for her complaints of sexual harassment.  Therefore, Averitt's motion for summary judgment is due to be denied.[5]  A separate order will be entered.

Done this 21st day of September 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671

---

[5] Averitt also moved for summary judgment on Plaintiff's claims that "Averitt retaliated against her by requiring her to use vacation time and her 12-week FMLA leave entitlement during a leave of absence." Doc. 70 at 1.  It appears this claim was directed at Plaintiff's employer, Team One Contract Services, and Plaintiff in her reply brief does not contest Averitt's arguments on this point.  Therefore, to the extent claims remain against Averitt for retaliation by forcing plaintiff to use vacation and FMLA leave, the motion for summary judgment is granted.